531 A.2d 861

Fox Grocery Company, (Wetterau, Inc.), Petitioner v. Workmen's Compensation Appeal Board (Shetterly, Jr.), Respondents.

Submitted on briefs March 26, 1987, to Judges MacPhail and Colins, and Senior Judge Blatt, sitting as a panel of three.

*Irvin S. Bails, Baskin, Flaherty, Elliott & Mannino, P.C.,* for petitioner.

*Lawrence R. Chaban, Yablonski, Costello & Leckie,* for respondent, Raymond Shetterly, Jr.

Opinion by Judge Blatt, October 1, 1987:

Fox Grocery Company (petitioner) petitions for review of an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's granting of benefits to Raymond Shetterly (claimant).

The facts of record are as follows. The claimant began working for the employer in May 1982 as an order assembler in the employer's warehouse. His duties in-

volved heavy physical labor, including the lifting of parcels ranging in weight from five to seventy pounds, and the operation of a floor jack. At some time subsequent to October 1982, the employer instituted a new production quota wherein increased production was expected of warehouse employees. The claimant did not maintain the newly required production rates, and was consequently issued two warnings in 1983 with regard to such failure. While at work, on September 15, 1983, he sustained chest pains and profuse sweating. A fellow employee called an ambulance to the work-site, and the claimant was then transported to the Monongahela Valley Hospital and treated for cardiovascular difficulties. On October 18, 1983, he filed a claim for workmen's compensation benefits alleging that he had suffered a disabling heart attack in the course of his employment and continued to be unable to work. Dr. James L. Brooks, a general practitioner, and a witness for the claimant, testified by deposition that the claimant had suffered a heart spasm (vasospasm) due to the stress of his employment. A witness for the employer, Dr. Larry Edward Hurvitz, board certified in internal medicine and cardiovascular disease, testified by deposition that he diagnosed the claimant's condition to be coronary artery disease and hypertension unrelated to the claimant's work duties.

The referee found that the claimant had suffered chest pains, and subsequent disability, due to the stress of his employment. Accordingly, the referee entered an Order granting the claimant benefits at a rate of $259.81 per week, commencing September 15, 1983. The Board affirmed and the employer now appeals.

Our scope of review, of course, is limited to determining whether or not constitutional rights were violated, an error of law was committed, or necessary findings of fact are unsupported by substantial evidence.

*Glinka v. Workmen's Compensation Appeal Board (Sears, Roebuck & Co.),* 104 Pa. Commonwealth Ct. 175, 521 A.2d 503 (1987). It is the referee's function, and not that of this Court, to assess credibility of witnesses and resolve questions of evidentiary weight in workmen's compensation cases. *Hayden v. Workmen's Compensation Appeal Board (Wheeling Pittsburgh Steel Corp.),* 83 Pa. Commonwealth Ct. 451, 479 A.2d 631 (1984). Neither this court, nor the Board, can substitute its discretion for that of the referee in the face of facts based upon substantial evidence. *American Refrigerator Equipment Company v. Workmen's Compensation Appeal Board,* 31 Pa. Commonwealth Ct. 590, 377 A.2d 1007 (1977). Substantial evidence has been defined as such relevant evidence a reasonable mind might accept as adequate to support the conclusion reached therefrom. *Workmen's Compensation Appeal Board v. Auto Express, Inc.,* 21 Pa. Commonwealth Ct. 559, 346 A.2d 829 (1975).

The sole question presented on review, therefore, is whether or not the referee's finding, as affirmed by the Board, that the medical evidence presented by the claimant is more credible than that presented by the employer, is supported by substantial evidence.

The employer first contends that the referee's acceptance of the opinion of a general practitioner that the claimant suffered a work-related heart spasm, over that of a cardiovascular specialist who testified to the contrary, constitutes a capricious disregard of competent medical evidence.[1] It follows, he argues, that the finding of fact in question is not supported by substantial evidence. We disagree.

---

[1] Although the petitioner relies on the capricious disregard standard, our review is limited to determining whether or not the referee's findings are supported by substantial evidence. *Glinka.*

The referee, of course, in the exercise of his broad discretion may accept or reject the testimony of any witness in whole or in part. *Matlack, Inc. v. Workmen's Compensation Appeal Board (Zwald)*, 90 Pa. Commonwealth Ct. 196, 494 A.2d 510 (1985). We do not believe, therefore, that the referee's acceptance of the testimony of a general practitioner over that of a cardiovascular specialist constitutes an error of law.

Next, the employer contends that the finding of a work-related heart spasm is not supported by substantial evidence because Dr. Brooks' medical testimony was based on hearsay. The employer specifically objects to the admissibility of conversations by Dr. Brooks with other doctors, facts in other doctors' reports, and diagnoses of other doctors which were relied upon by Dr. Brooks.

Preliminarily, we note that facts and diagnosis in medical reports, if hearsay, cannot be the exclusive basis for a grant of benefits, but, where they are corroborated by other competent evidence, they may be considered. *Voitek TV Sales & Service, Inc. v. Workmen's Compensation Appeal Board (Brunges)*, 71 Pa. Commonwealth Ct. 475, 455 A.2d 265 (1983). Our review of the record here indicates that there is substantial evidence in the nature of Dr. Brooks' testimony based upon his own knowledge, as well as lay testimony, to corroborate the reports at issue here. Accordingly, we will limit our review of the employer's hearsay claim to its contention that an inadmissible hearsay conversation[2] was relied upon by Dr. Brooks and considered by the referee.

---

[2] At deposition, Dr. Brooks talked of his discussion of the case with Dr. Weiss, the treating physician who attended the claimant when he was brought to Monongahela Valley Hospital on September 15, 1983:

> . . . We discussed the case, and we both agreed that if the findings did not indicate an acute myocardial infarction in the case of Mr. Shetterly, that he should have coronary catheterization performed.

Our review of the referee's findings[3] indicates that the referee relied upon Dr. Brooks' testimony, as the claimant's *treating* physician and based upon his personal knowledge. We believe, therefore, that there is substantial evidence to support the referee's findings that the claimant suffered a work-related heart spasm. Accordingly, any error in the admission of Dr. Weiss' hearsay statement, was de minimis, inasmuch as that testimony was not the sole basis of the finding concerned.

---

[3] With regard to Dr. Brooks' testimony and all the evidence presented, the referee pertinently found that:

SIXTH: The claimant introduced into evidence the medical deposition of Dr. James L. Brooks taken on February 23, 1984. Dr. Brooks is a General Practitioner who first began seeing the claimant in June, 1981 and in July and August for a general check-up because of a diabetic condition that was diagnosed in 1979. In August, 1981, the claimant had an elevated blood pressure, however, in November, 1981, his blood pressure was O. K. The Doctor subsequently saw the claimant in February and May, 1982 for his blood pressure and in August, 1982, January, 1983 and May, 1983. On September 12, 1983, the Doctor saw the claimant for chest pains that he was experiencing at work due to the stress and the increased production. The Doctor had scheduled that the claimant have some tests done, however, prior to the tests being performed, the claimant suffered his problems in the nature of chest pain on September 15, 1983 with the subsequent hospitalizations, treatments and catheterization. It was the Doctor's opinion that the medical treatment showed that there was no myocardial infarction, however, catheterization did show that there was minimum placquings in several vessels in the coronary arteries and that one (1) vessel had a significant narrowing. The treatment prescribed was no surgery, but a nitro dur patch was prescribed along with beta blockers. The November 28, 1983 stress test showed that on exercise, the heart output decreased rather than increased. It was the Doctor's opinion that work in the

We will, therefore affirm the order of the Board.

ORDER

AND NOW, this 1st day of October, 1987, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed.

---

nature that the claimant was performing at the time of his chest pains would cause undesirable pain in the left ventricle and coronary arteries. It was further the Doctor's opinion that the claimant's problems were due to the stress in the type of work that he was performing in his job due to a coronary vasospasm and the causation was related to the September 15, 1983 angina caused by the stressful environment and the heavy exertion while at work. The Doctor's prognosis was that the claimant could not return to the type of job that he was performing at the time of his chest pain.

. . . .

NINTH: This Referee finds as a fact, based on all the evidence submitted, both medical and lay, that the claimant had suffered an incident related to his heart in the nature of chest pains on September 15, 1983 and that the chest pains and subsequent disability therefrom were the result of the increased production quotas placed upon the claimant and the subsequent stress therefrom, as well as the heavy work that the claimant was performing. This Referee finds as a fact that prior to the increasing of production standards, the claimant was able to maintain a degree of work in the area with the defendant and met the standards as well as the type of physical effort necessary. This Referee further finds as a fact that the claimant had an underlying coronary and subsequently is totally disabled from returning to the type of employment that he was doing at the time of the incident. This Referee bases his findings on the credible evidence of the claimant and the more credible evidence of claimant's medical witness.